EUGENE G. IREDALE (SBN 75292)
PETER BIBRING (SBN 223981)
SARAH MUSUMECI (SBN 328306)
IREDALE & YOO, APC
105 West F Street, 4th Floor
San Diego, CA 92101-6087
Tel: (619) 233-1525 | Fax: (619) 233-3221
Attorneys for Plaintiff, ESTATE OF ROBERT LIDDELL

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

ESTATE OF ROBERT LIDDELL, by and through its personal representative Timothy Liddell,

Plaintiff,

v.

COUNTY OF SAN DIEGO, CHRISTOPHER KLEPPE, in his individual capacity, JORDI HERRERA, in his individual capacity, and DOES 1-25,

Defendants.

CASE NO. '26CV6005 CAB BJW

**COMPLAINT**

**(1) Unreasonable Search and Seizure Resulting in Death (42 U.S.C. §1983)**
**(2) Denial of Medical Care (42 U.S.C. §1983)**
**(3) *Monell* (42 U.S.C. §1983)**
**(4) Violation of Cal. Civ. Code §52.1 (Bane Act)**
**(5) Negligence**
**(6) Battery**
**(7) Assault**
**(8) Survival Action (CCP §377.30)**

**JURY TRIAL DEMANDED**

Plaintiff ESTATE OF ROBERT LIDDELL, by and through its successor in interest Timothy Liddell, alleges as follows:

## I. INTRODUCTION

On the night of his death, Robert Liddell was in the bedroom of his own home in Alpine. Robert had grown up and lived in San Diego County all his life. He had attended McKinley Elementary, Wilson Junior High and Hoover High School, before attending Mesa College. He worked for 48 years at NASSCO. Despite his early years with an abusive father, Robert had a warm relationship with his younger brother Timothy. Robert was fiercely protective of Timothy. He had taught Timothy how to drive a stick shift on a 1954 Lincoln Cosmopolitan. Even though he was divorced, Robert maintained a good relationship with his ex-wife. Robert loved his long bike rides including 100-mile rides, jumping back on his bicycle shortly after he had hip replacement surgery. Robert liked to sit outside the home he had worked so hard to attain, watch the birds and enjoy an evening whiskey and the sunset.

On the evening of November 5, 2025, a neighbor called the San Diego Sheriff’s Department to report that she had knocked on Robert Liddell's front door and pushed it almost open. She believed that if she had knocked again, the door might open. The house was quiet and dark. She reported no crime, no violence, no weapon, no injury, and no sound of distress. Two San Diego County Sheriff's deputies, Christopher Kleppe and Jordi Herrera, drove to Robert’s home. When they arrived, the front door was closed shut. Nothing in the house was amiss. After approximately 14 seconds and having perceived nothing unusual, they decided to go inside anyway. Once inside, they drew their firearms and began searching through the house room by room, using only their flashlights instead of turning on the lights in the home.

Mr. Liddell, who was 72 years old and hard of hearing, had been sleeping in his bedroom at the far end of the hallway. He came into his own hallway barefoot, in his underwear, and told the men in his house to get out. He was holding a BB

gun. He became disoriented when the defendants shined bright beams of light directly in his eyes.. Within moments of entering, Herrera shot Mr. Liddell four times in his own home. Robert Liddell later bled to death.

## II. JURISDICTION AND VENUE

1. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)-(4)

2. The Court has supplemental jurisdiction over Plaintiff's California state law claims under 28 U.S.C. § 1367(a), because those claims arise from the same case or controversy — the illegal entry and the fatal shooting inside 1753 Kyrsten Terrace Court on November 5, 2025.

3. Venue is proper in the Southern District of California under 28 U.S.C. § 1391(b)(2), because all of the acts and omissions giving rise to Plaintiff's claims occurred in Alpine, County of San Diego, California, within this District.

4. Robert Liddell died in the County of San Diego, State of California. For purposes of jurisdiction, the Estate of Robert Liddell is in the Southern District of California.

5. Timothy Liddell is the duly appointed, qualified, and acting personal representative of the Estate of Robert Liddell. On February 2, 2026, the Superior Court of California, County of San Diego, Probate Division, in the case of *In re Estate of Robert Liddell*, Case No. 26PE000018C, appointed Timothy Liddell as the administrator of the Estate and issued Letters of Administration to him. Those Letters have not been revoked, suspended, or limited, and remain in full force and effect. A true and correct copy of the Letters is attached hereto as Exhibit 1 and incorporated herein by reference. As personal representative, Timothy Liddell is authorized to commence and maintain this action for the benefit of the Estate under California Probate Code § 9820(a).

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiff timely presented written claims for damages to the County of San Diego pursuant to California Government Code §§ 905, 910, and 911.2 on April 9, 2026.

7. The County of San Diego rejected those claims by written notice dated May 11, 2026.

8. Plaintiff has exhausted all administrative remedies that are prerequisites to the state law causes of action alleged herein. No claim presentation requirement applies to Plaintiff's federal causes of action.

## IV. PARTIES

9. Decedent ROBERT LIDDELL was, at all times relevant to this Complaint, a natural person, a citizen of the United States, and a resident of the County of San Diego, State of California, living at 1753 Kyrsten Terrace Court, Alpine, California 91901.

10. Plaintiff ESTATE OF ROBERT LIDDELL brings the survival claims alleged herein through its personal representative.

11. Defendant COUNTY OF SAN DIEGO is a public entity organized and existing under the laws of the State of California. The San Diego County Sheriff's Office, including its Alpine Station, is an agency, department, and subdivision of the County of San Diego. The County of San Diego is responsible for the acts and omissions of the Sheriff's Office and its deputies, and for the policies, customs, practices, training, supervision, and discipline of that Department.

12. Defendant CHRISTOPHER KLEPPE was, at all times relevant to this Complaint, a deputy sheriff employed by the County of San Diego and assigned to the Alpine Station, acting within the course and scope of his employment and under color of state law. He is sued individually.

13. Defendant JORDI HERRERA was, at all times relevant to this Complaint, a deputy sheriff employed by the County of San Diego and assigned to

the Alpine Station, acting within the course and scope of his employment and under color of state law. He is sued individually.

14. DOES 1 through 25 are sworn deputies, supervisors, dispatchers, or other employees of the County of San Diego who participated in, directed, supervised, ratified, or failed to intervene in the acts and omissions alleged herein and policymaking or supervisory officials of the County of San Diego. Their true names and capacities are presently unknown to Plaintiff, who sues them by fictitious names and who will seek leave to amend this Complaint to state their true names and capacities when ascertained.

15. Plaintiff is informed and believes, and on that basis alleges, that each Defendant was at all relevant times the agent, servant, or employee of each other Defendant, acting within the course and scope of that agency or employment, and that each Defendant is responsible in some manner for the occurrences alleged herein and for Plaintiff's resulting injuries and damages.

16. At all times material to this Complaint, each individual Defendant acted or purported to act in the performance of official duties as a peace officer and under color of the statutes, ordinances, regulations, customs, and usages of the State of California and the County of San Diego.

## V. FACTUAL ALLEGATIONS

### A. The Shooting of Robert Liddell

17. Robert Liddell lived at 1753 Kyrsten Terrace Court in Alpine, California, an unincorporated community in eastern San Diego County. His home was a single-family residence of approximately 2,175 square feet, with four bedrooms and three bathrooms.

18. The primary bedroom of Mr. Liddell's home, which was at the very back of the house, was fitted with blackout curtains. Plaintiff is informed and believes, and on that basis alleges, that Mr. Liddell customarily retired to sleep there early in the evening.

19. The area of Alpine in which Mr. Liddell lived has very little street lighting. With the interior lights off, the inside of Mr. Liddell's home is effectively pitch black.

20. On November 5, 2025, Linda Christensen, a neighbor who resides across the street, went to Mr. Liddell's home unannounced and knocked on his door.

21. Christensen telephoned the Sheriff's Department to report that she had knocked on the door and no one had answered.

22. The basis for Ms. Christensen's call was that Mr. Liddell's front door supposedly began to move when she knocked on it. She told Dispatch that ***had*** she knocked again on the door, she thought it would then open.

23. Ms. Christensen told Dispatch that when she made the call, she had been standing outside Mr. Liddell's home for five minutes. Ms. Christensen did not report a burglary, a robbery, an assault, a disturbance, a domestic dispute, a suicide threat, a medical emergency, a fire, a weapon, gunshots, screams, cries for help, blood, forced entry, signs of struggle, or any other indication that any person inside the residence was injured or in danger.

24. Christensen reported nothing out of the ordinary other than the fact that she had knocked on someone's front door. Nothing had happened during the five minutes she was standing outside the house.

25. The call was dispatched to the Alpine Station as a welfare check. Defendants KLEPPE and HERRERA responded.

26. Defendants KLEPPE and HERRERA arrived at 1753 Kyrsten Terrace Court on the evening of November 5, 2025, after dark.

27. The deputies did not have a search warrant. They did not have an arrest warrant. They did not seek a warrant and made no effort to obtain one.

28. No person with authority over the premises consented to the deputies' entry.

29. No exigent circumstance existed. There was no emergency requiring immediate entry to render aid, no hot pursuit, no imminent destruction of evidence, no risk of escape, and no threat to any person inside or outside the residence.

30. When Deputy Herrera started knocking on the front door, it was closed. It did not swing open even after Herrera banged on it seven times.

31. The deputies flashed their lights into the house through the large front window with their flashlights and saw nothing out of place. The house was quiet.

32. Herrera and Kleppe saw nothing out of the ordinary and a front door that was shut. Having been out the house for mere seconds, they elected to enter.

33. Notwithstanding the absence of a warrant, consent or exigency, the deputies entered Mr. Liddell's home through the front door.

34. Herrera had to turn the knob on the door to gain entry.

35. As they were already entering the home, Kleppe announced on his radio that they were going in. He provided Dispatch no additional information.

36. These deputies did not ask Dispatch for information as to who lived in the home, whether they might be armed, or whether they might be hard of hearing or suffer from a disability.

37. These deputies did not seek to telephone Mr. Liddell before they entered his home.

38. The warrantless entry into the home was objectively unreasonable.

39. The deputies did not contact Christensen to find out whether there was any basis for a welfare check in the first instance given that she reported that she told Dispatch that *if* she knocked on the door again, she felt it would open. They knew that the door was shut upon their arrival and nothing was amiss.

40. The deputies did not properly knock and announce their presence, authority, and purpose or demand entry before crossing the threshold. They did not wait a reasonable period to be refused admittance.

41. The deputies entered with their firearms drawn and with flashlights illuminating the darkened interior with narrow and intense glaring beams of light.

42. Having entered, they proceeded to search through Mr. Liddell's home.

43. The deputies conducted an armed, room-by-room search of a private residence in darkness without a warrant.

44. Had the deputies turned the lights on in the house, the hallway would have appeared like this:



(Photo taken after Mr. Liddell's death, showing his bedroom at the end of the hallway when the lights are on).

45. Robert Liddell appeared in the hallway of his own residence. He was barefoot. He was wearing only underwear. He had been sleeping and had been startled awake by the presence of intruders in his home. Herrera shone his flashlight directly into Mr. Liddell's eyes, which made it difficult for Mr. Liddell to see who the intruders were.

46. Mr. Liddell said words to the effect of "get the f--- out."

47. Mr. Liddell was holding a BB gun. He did not fire it. He made no threat, verbal or otherwise, to harm anyone.

48. The deputies saw Mr. Liddell clearly and knew that he was an elderly man wearing underwear coming out of a dark bedroom with a bright light being shone in his eyes.

49. Herrera then fired his gun a total of four times at Robert Liddell. The deputies did not attempt to withdraw, take cover, use available concealment, illuminate the scene adequately, call for additional units, establish a perimeter, summon a supervisor, deploy any less-lethal option, or attempt any verbal de-escalation before killing Mr. Liddell.

50. The flashlight in Mr. Liddell's face was blinding and disorienting.

51. Deputy Herrera, instead of taking cover, walked to the front of Mr. Liddell and shot him four times.

52. Mr. Liddell slumped on the floor of the hallway of his own home, barefoot, bleeding from his wounds, confused.

53. Instead of taking Mr. Liddell to the nearest emergency facility, officials brought Mr. Liddell to Scripps Mercy Hospital, some 44 miles from his home. During this journey, Mr. Liddell bled profusely from his wounds.

54. Mr. Liddell did not arrive at the hospital until approximately 8:10 p.m., forty-two minutes after he fell to the ground, shot.

55. Mr. Liddell was transported to Scripps Mercy Hospital with hypotension, tachycardia, hypothermia and profound shock.

56. Robert Liddell died as a result of multiple gunshot wounds to the chest, arm and abdomen, having bled four liters of blood.

57. He was declared dead at 11:13 p.m.

**B. *Monell* Allegations**

58. Plaintiffs are informed and believe, and on that basis allege, that the County of San Diego, acting through the Sheriff's Department and its final policymakers, maintained policies, customs, and practices that were the moving force behind the violation of Mr. Liddell's rights, including:

a. Failing adequately and properly to train deputies that a welfare check request does not, by itself, authorize a warrantless entry into a residence, and failing to train deputies on the limits of the emergency aid exception under controlling law, including the U.S. Constitution.

b. Training, permitting, or tolerating a practice under which deputies responding to welfare check calls enter and search residences without a warrant, without consent, and without exigency, as a matter of routine;

c. Failing adequately and properly to train deputies on tactics for entering dark interiors, on the elevated risk that a lawful occupant will be mistaken for a threat, and failing adequately and properly to train on the Constitutional requirements to announce purpose, authority and identity before entering a home;

d. Failing adequately and properly to train deputies on de-escalation, on the use of cover and concealment, on tactical repositioning, and on the requirement to give a warning before using deadly force when feasible; and

e. Failing adequately and properly to train and supervise deputies regarding the requirements of California Penal Code § 835a, including the requirement that the officer's conduct leading up to the use of deadly force be considered;

f. Conducting inadequate investigations of deputy-involved shootings and uses of force, and failing to impose discipline, resulting in

deputies' understanding that unlawful entries and unjustified uses of force will not result in adverse consequences.

59. Plaintiffs are informed and believe, and on that basis allege, that these policies, customs, and practices were maintained with deliberate indifference to the constitutional rights of persons in Mr. Liddell's position, and that the need for different or additional training and supervision was obvious in light of the frequency with which deputies conduct welfare checks at homes.

60. Conducting welfare checks is a daily occurrence within the San Diego Sheriff's Office.

61. Plaintiffs are informed and believe, and on that basis allege, that following the shooting of Mr. Liddell, the County of San Diego and its final policymakers reviewed the deputies' conduct and approved it, thereby ratifying both the unlawful entry and the use of deadly force.

62. As a direct and proximate result of Defendants' conduct, Robert Liddell suffered a violation of his Fourth Amendment right to be secure in his home; the terror of finding armed strangers inside his house at night; conscious pre-death pain and suffering; and the loss of his life.

63. As a direct and proximate result of Defendants' conduct, the Estate of Robert Liddell has incurred medical, funeral, and burial expenses, and has lost the earnings and accumulations Mr. Liddell would reasonably have acquired during his natural life expectancy.

64. The acts and omissions of the individual Defendants were willful, malicious, oppressive, and done with reckless and callous disregard for Mr. Liddell's rights and for his life, entitling Plaintiffs to punitive damages against the individual Defendants.

## FIRST CAUSE OF ACTION
## UNREASONABLE SEARCH AND SEIZURE RESULTING IN DEATH
## [42 U.S.C. § 1983; U.S. Constitution, Fourth and Fourteenth Amendments]
## (Against Defendants Kleppe and Herrera)

65. Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

66. Robert Liddell had a right under the Fourth Amendment to the United States Constitution to be secure in his house against unreasonable entries without a warrant. He had a right under the Fourth Amendment to be free from warrantless searches of his home. He had a right to be free from searches of his home conducted in an unreasonable manner. He had a right to be free from unreasonable seizures, including the unreasonable use of fatal force by state officials.

67. The conduct of the defendants in this case violated all these Fourth Amendment protections.

68. Acting under color of state law, Defendants KLEPPE, HERRERA, and DOES 1 through 25 entered and searched Mr. Liddell's residence without a warrant, without consent, and without exigent circumstances. The entry into the home and search were unreasonable and violated the Fourth Amendment.

69. Each of these Defendants was an integral participant in the unlawful search and is jointly liable for the harm it caused, whether or not each personally fired a weapon.

70. The unlawful entry and search was both the cause in fact and the proximate cause of the shooting and death of Robert Liddell. The shooting was a foreseeable consequence of armed deputies entering a dark home unannounced.

71. The Fourth Amendment draws a firm line at the entrance to the house. Absent a warrant, consent, or exigent circumstances, that threshold may not reasonably be crossed. *Payton v. New York*, 445 U.S. 573, 590 (1980).

72. There is no broad "community caretaking" exception to the warrant requirement that permits officers to enter a home. *Caniglia v. Strom,* 593 U.S. 194, 198-99 (2021). A dispatch labeled “welfare check” does not authorize a warrantless entry into a home.

73. The “emergency aid” exception applies only where officers have an objectively reasonable basis for believing that a person inside is seriously injured or imminently threatened with such injury. *Hopkins v. Bonvicino*, 573 F.3d 752, 763 (9th Cir. 2009). The deputies had no such basis. An unlocked closed front door is not an emergency.

74. The entry into Mr. Liddell's home was therefore an unreasonable search in violation of the Fourth Amendment.

75. The unlawfulness of a warrantless, non-exigent, non-consensual entry into a residence has been clearly established for decades. No reasonable deputy could have believed that a neighbor's report of a closed, unlocked door authorized an armed search of the interior of a home.

76. Defendant HERRERA and Defendant KLEPPE were each integral participants in the unlawful search. Each is jointly liable for the resulting harm, whether or not each personally discharged a firearm.

77. The unlawfulness of the deputies’ entry and conduct was clearly established at the time. Defendants are not entitled to qualified immunity.

78. The unlawful entry was the cause in fact of Mr. Liddell's death. Had the deputies not entered his home, Mr. Liddell would not have been shot inside it.

79. The unlawful entry was the proximate cause of Mr. Liddell's death. Among the reasons the Fourth Amendment erects a barrier to entry is that an officer may, through a mistaken assessment of a threat, harm a person inside the residence. Persons in their own homes may innocently hold kitchen knives, cell phones, toy guns, or real ones that police may mistakenly believe pose a threat. That risk is precisely what materialized here. The consequence was reasonably foreseeable.

80. Entry by armed officers, on alert and with weapons drawn, into a dark home at night can foreseeably result in a shooting when an officer mistakes an innocent object for a weapon.

81. The deputies' entry created that risk, and the risk that materialized was the one their unlawful conduct caused.

82. Mr. Liddell's conduct was not a superseding cause. A victim's behavior is not a superseding cause when the tortfeasor's actions are unlawful precisely because the victim foreseeably and innocently might act in the way he did. Mr. Liddell did not know the intruders were officers, did not fire, and did not aim at anyone. His ordinary act of holding a BB gun while confronting strangers in his own dark house at night was neither extraordinary nor unforeseeable, and does not shift responsibility for his death from the deputies to the man they killed.

83. Plaintiffs are therefore entitled to recover all damages proximately caused by the warrantless entry, including damages for Mr. Liddell's death.

84. Mr. Liddell's death was a natural consequence of the warrantless search of his home. *Tatum v. Moody*, 768 F.3d 806, 817 (9th Cir. 2014).

85. Both Kleppe and Herrera are responsible for the unlawful entry and the natural consequence of those decisions to enter the home.

86. The conduct of Kleppe and Herrera resulting in the needless death of an innocent citizen in his own home violated the Fourth Amendment's protections in several different ways:

(1) The entry into the home was warrantless and unjustified;

(2) Kleppe and Herrera did not properly or adequately announce their purpose and authority before the illegal entry;

(3) The search within the home after the illegal entry was conducted in an unreasonable and dangerous manner. Kleppe and Herrera proceeded with firearms drawn and pointed into a pitch-black house. They used bright, narrow-beamed flashlights which they

shined directly at their victim's eyes. Effectively they prevented Mr. Liddell from being able to see their uniforms or their persons; and

(4) Herrera's use of fatal force by firing repeatedly into Mr. Liddell's body when he emerged from a bedroom, in addition to being the foreseeable result of the antecedent illegal and unreasonable conduct, was in and of itself excessive and unreasonable based on the totality of the circumstances.

87. As a direct and proximate result of this violation, Mr. Liddell suffered conscious pain, suffering and death. The Estate is entitled to compensatory damages according to proof, including damages for pre-death pain and suffering and for loss of life, and to punitive damages against the individual Defendants, together with attorney's fees under 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION
## DENIAL OF MEDICAL CARE
## [42 U.S.C. § 1983; U.S. Constitution, Fourteenth Amendment]
## (Against Defendants Kleppe, Herrera and Does 1-25)

90. Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

91. After Mr. Liddell was shot multiple times, he was conscious and responding to the deputies.

92. Shortly after 7:30 p.m., the Alpine Fire Department had arrived. Mr. Liddell spoke with them and responded to the paramedics.

93. For some reason, it took 40 minutes to arrive at the hospital while Mr. Liddell was "hemodynamically unstable" en route. Hemodynamic instability is a critical medical condition in which the body's circulatory system fails to maintain adequate blood pressure and blood flow to vital organs.

94. When Mr. Liddell arrived at the hospital at 20:10, he was still breathing spontaneously and his eyes were open.

95. The hospital records indicate:

> Patient underwent resuscitative thoracotomy, exploratory laparotomy, and 5 portions of bowel were resected. Patient received 10 units of packed red blood cells 10 units of FFP, 1 unit of platelets, 2 units of whole blood. Please see operative note for further description of OR resuscitation. Patient was taken from the OR with an open abdomen and remained intubated upon admission to the ICU. Upon admission to the ICU, patient's blood pressure required further resuscitation with blood products. Patient received 26 units of PRBC, 23 units of FFP, and an additional unit of platelets. Patient became pulseless and CPR with compressions was initiated. Patient received 2 units of bicarb, 2 units of epi, 1 g of calcium, and ROSC was obtained. Further hemorrhage control and resuscitation was required. After an additional 45 minutes of continuous blood transfusion via the massive transfusion protocol, patient became bradycardic, hypotensive again and eventually coded. At this time, it was determined that all further intensive resuscitation of this patient via massive transfusion protocol was futile. Time of death was called at 2313.

96. Upon information and belief, Defendants Kleppe, Herrera and Does 1-25 substantially delayed emergency medical services to Mr. Liddell who was bleeding out from his wounds. Had it not taken 40 minutes to get to a hospital, Mr. Liddell would not have continued to lose such a large quantity of blood.

97. As a result of this unprecedented delay, Mr. Liddell, who was conscious until he arrived at the hospital, experienced unnecessary pain and suffering, and death.

**THIRD CAUSE OF ACTION**
**MUNICIPAL LIABILITY**
**[42 U.S.C. § 1983 — *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978); U.S. Constitution, Fourth and Fourteenth Amendments]**
**(Against Defendant County of San Diego)**

98. Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

99. The unconstitutional acts of the deputies were the product of policies, customs, and practices of the County of San Diego, and of the failures of training, supervision, and discipline, alleged above.

100. These policies, customs, and practices were maintained with deliberate indifference to the constitutional rights of persons such as Robert Liddell. The need for adequate training and supervision on warrantless entries during welfare checks, on tactics in darkened residences, and on the use of deadly force was obvious, and the failure to provide it was substantially certain to result in constitutional violations. *City of Canton v. Harris*, 489 U.S. 378 (1989).

101. Welfare checks occur on a daily basis, multiple times a day.

102. These policies, customs, and practices were the moving force behind the violation of Mr. Liddell's rights and his death. Plaintiffs are entitled to compensatory damages according to proof and to attorney's fees under 42 U.S.C. § 1988.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF CIVIL RIGHTS**
**[Cal. Civ. Code § 52.1]**
**(Against Defendants Kleppe, Herrara, County of San Diego and Does 1-25)**

103. Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

104. The Fourth and Fourteenth Amendments to the United States Constitution, and Article I, sections 1 and 13 of the California Constitution, secured

to Robert Liddell the right to be free from unreasonable searches of his home and from unreasonable and excessive force.

105. Defendants interfered with, and attempted to interfere with, the exercise and enjoyment of those rights by threats, intimidation, and coercion, including by entering his home under arms without lawful authority, by searching it at gunpoint, by pointing firearms at him inside his own residence, and by shooting him. They interfered with his right to bodily integrity under § 43 of the California Civil Code.

106. The warrantless entry and armed search of Mr. Liddell's home were themselves coercive acts independent of, and antecedent to, the shooting.

107. Doe Defendants who authorized or caused Defendants Kleppe and Herrara to enter the home without a warrant likewise violated Mr. Liddell's rights with threats, intimidation or coercion.

108. Doe Defendants who denied immediate medical care and delayed critical emergency care acted with threats, intimidation or coercion and acted with recklessness because Mr. Liddell could not go elsewhere to obtain transportation to a Level 1 trauma center.

109. These defendants acted in reckless disregard of Mr. Liddell's rights, within the meaning of *Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766, 801-04 (2017), and *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-45 (9th Cir. 2018).

110. Defendant County of San Diego is vicariously liable for the acts and omissions of its employees under California Government Code § 815.2.

111. Plaintiffs are entitled to compensatory damages, statutory damages, civil penalties, and attorney's fees pursuant to California Civil Code §§ 52 and 52.1, and to punitive damages against the individual Defendants.

**FIFTH CAUSE OF ACTION**
**NEGLIGENCE**
**(Against All Defendants)**

112. Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

113. Defendants owed Robert Liddell a duty to use reasonable care, including a duty to use reasonable care in deciding whether to enter his home, in the tactics they employed once there, and in the decision to use deadly force. Under California law, a law enforcement officer's tactical conduct and decisions preceding the use of deadly force are relevant considerations in determining whether the use of deadly force gives rise to negligence liability. *Hayes v. County of San Diego*, 57 Cal. 4th 622, 639 (2013).

114. Defendants breached that duty by, among other things:

a. Entering Mr. Liddell's residence without a warrant, without consent, and without exigent circumstances;

b. Entering a darkened residence with firearms drawn without any less lethal option;

c. Conducting a room-by-room search of an occupied residence in darkness with only their flashlights which blinded Mr. Liddell, instead of turning on the lights of the house;

d. Failing to use any readily available acoustic device, such as a loudspeaker or bull horn, which would have alerted Mr. Liddell who was hard of hearing that officers were at the door;

e. Failing to use available cover and concealment, to reposition, to summon additional units or a supervisor, or to attempt any de-escalation;

f. Failing to give any warning that deadly force would be used, although it was feasible to do so;

g. Using deadly force against a man who posed no imminent threat of death or serious bodily injury, in violation of California Penal Code § 835a; and

h. Failing to provide timely medical care

115. It is beyond negligent for officers to enter a dwelling with guns drawn and without properly announcing their presence, absent special circumstances that might justify such action. The totality of the deputies' conduct here was reckless as a matter of tort law.

116. Defendant County of San Diego and supervisory Does further breached their duty of care by failing to exercise reasonable care in the training, supervision, retention, and discipline of the deputies.

117. Defendant County of San Diego is vicariously liable for the negligence of its employees acting within the course and scope of their employment. Cal. Gov't Code § 815.2; Cal. Civ. Code § 2338.

118. As a direct and proximate result of Defendants' negligence, Robert Liddell suffered injury and death, and Plaintiffs suffered the damages alleged above.

**SIXTH CAUSE OF ACTION**
**ASSAULT**
**(Against Defendants Kleppe, Herrera and the County of San Diego)**

90. Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

91. Defendants intentionally placed Robert Liddell in reasonable apprehension of imminent harmful and offensive contact by entering his darkened home unannounced with firearms drawn, by pointing firearms at him inside his own residence, and by shouting commands at him without identifying themselves.

92. Mr. Liddell did not consent to that conduct, and a reasonable person in his position would have been placed in apprehension of imminent harm.

**93.** As a direct and proximate result, Mr. Liddell suffered fear, terror, and emotional distress before his death. Defendant County of San Diego is vicariously liable under California Government Code § 815.2. Plaintiffs are entitled to punitive damages against the individual Defendants.

**SEVENTH CAUSE OF ACTION**
**BATTERY**
**(Against Defendants Kleppe, Herrera, and the County of San Diego)**

94. Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

95. Defendants intentionally shot Robert Liddell, causing harmful and offensive contact with his person. Mr. Liddell did not consent to that contact.

96. The force used was unreasonable and excessive under the circumstances.

97. As a direct and proximate result, Mr. Liddell suffered conscious pain and suffering and death, and Plaintiffs suffered the damages alleged above.

98. Defendant County of San Diego is vicariously liable under California Government Code § 815.2. Defendants Kleppe and Herrera acted maliciously and with a wanton and reckless disregard for Mr. Liddell's rights, entitling Plaintiffs to punitive damages against them.

**EIGHTH CAUSE OF ACTION**
**SURVIVAL ACTION**
**[Cal. Code Civ. Proc. § 377.30]**
**(Against All Defendants)**

99. Plaintiffs reallege and incorporate by reference each preceding paragraph as though fully set forth herein.

100. The causes of action that Robert Liddell would have been entitled to bring had he lived survive his death and pass to his Estate.

101. Mr. Liddell did not die instantly, and survived for a period of time following the shooting during which he experienced conscious pain and suffering.

102. The Estate is entitled to recover the loss and damage Mr. Liddell sustained or incurred before death, including medical expenses, lost earnings, and other economic loss, together with punitive damages against the individual Defendants that Mr. Liddell would have been entitled to recover had he lived. Cal. Code Civ. Proc. § 377.34(a).

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1. For general and special damages according to proof;
2. For compensatory damages, including damages for Robert Liddell's pre-death pain and suffering and loss of life on Plaintiffs' federal claims;
3. For funeral, burial, and medical expenses according to proof;
4. For punitive and exemplary damages against the individual Defendants in an amount sufficient to punish and deter;
5. For statutory damages, civil penalties, and treble damages as provided by California Civil Code §§ 52 and 52.1;
6. For reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and California Civil Code § 52.1;
7. For costs of suit incurred herein;
8. For pre-judgment and post-judgment interest as allowed by law; and
9. For such other and further relief as the Court deems just and proper.

///

///

///

## VII. DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

Respectfully Submitted,

Dated: October 21, 2026

**IREDALE AND YOO, APC**
s/ *Eugene Iredale*
EUGENE IREDALE
PETER BIBRING
SARAH MUSUMECI
Attorneys for Plaintiff